## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

STEVEN R. SMITH,

      Plaintiff,

v.                                                              Case No.  3:19-cv-1508-LC/MJF

ANDREW M. SAUL,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Steven R. Smith brings this action under 42 U.S.C. § 405(g) seeking review of a final adverse decision of the Commissioner of the Social Security Administration. The Commissioner denied Smith's application for Supplemental Security Income ("SSI"). Plaintiff timely pursued and exhausted his administrative remedies. Upon review of the record before this court, the findings of fact and determinations of the Commissioner are supported by substantial evidence. The undersigned, therefore, respectfully recommends that the decision of the Commissioner be affirmed.[1]

---

[1] This case was referred to the undersigned pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 71.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*

## I.    Procedural History

On July 13, 2015, Plaintiff protectively filed an application for SSI. He alleged that the onset date of his disability was February 23, 2015. (Tr. 63).[2] His application was denied both initially and on reconsideration. (Tr. 63; 149-50; 163-64). On August 3, 2017 and February 16, 2018, the ALJ held administrative hearings. (Tr. 97-136). On June 26, 2018, the ALJ issued a written decision finding that Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 13, 2015, the date the applicated was filed." (Tr. 74).

Plaintiff sought review of the ALJ's decision from the Appeals Council and submitted additional evidence. (Tr. 1, 2). On March 22, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 2). In denying Plaintiff's request for review, the Appeals Council declined to consider Plaintiff's additional evidence because the additional evidence did "not relate to the period at issue. Therefore, it [did] not affect the decision about whether [Plaintiff was] disabled beginning on or before June 26, 2018." (Tr. 2). *See Ashley v. Comm'r of Soc. Sec. Admin.*, 707 F. App'x 939, 945 (11th Cir. 2017) (stating that when the Appeals Council states that it "looked at" the new evidence and conclude it is "about a later time" and that it

---

[2] All references to "Tr." refer to the transcript of the SSA record filed on July 29, 2019. The page numbers cited herein are those found on the bottom right-hand corner of each page of the transcript rather than the page numbers which were assigned by the court's electronic docketing system.

"did not affect the [ALJ's] decision" that the Appeals Council declined to consider the new medical records).[3] This appeal followed.

## II.    Plaintiff's Medical History

### A.    Medical History Prior to Plaintiff's Protective Filing Date of July 13, 2015

Plaintiff alleges disability due to gout, right shoulder bursitis, diabetes mellitus, hypertension, obesity, and an anal fistula. (Doc. 12 at 3). On January 28, 2014, Plaintiff visited Christ Community Health Services ("CCHS") in Memphis, Tennessee. Plaintiff complained of hypertension and rectal bleeding. (Tr. 424). The examination notes state that he had a "raised open area to right buttock. No warmth erythema or drainage at site." (Tr. 425). The medical record describes a buttock abscess and states "[a]bscess has drained at home and is healing. Patient can continue to apply warm compress to area and allow skin to heal. If patient does not have full recover[y] of area or notices warmth/erythema/pain to area he should follow up." (Tr. 426).

Plaintiff returned to CCHS for a follow up appointment on March 11, 2014. (Tr. 421). The medical record lists as a "current problem" a buttock abscess. (Tr. 422). The skin exam states ".5 cm fluctuant area to right buttock erythema, but no warmth at site, skin around healing well." (*Id.*). The treatment notes state "[a]rea is

---

[3] The Commissioner concedes that "the Appeals Council declined to consider Plaintiff's additional evidence . . . ." (Doc. 13 at 13).

healing well patient declines I/D today. Since area is moving towards recovery patient can continue warm compress and use antibiotic ointment to area. Patient assured such small area that no need for oral antibiotics today." (Tr. 423).

On January 9, 2015, Plaintiff presented to CCHS with what Plaintiff thought was a "hemorrhoid on his buttocks." (Tr. 417). Plaintiff complained that "it drains and bleeds daily x 1 year" which requires him to wear a pad. (*Id.*). The examination notes related to Plaintiff's buttocks state "1 cm abscess with mild amount of drainage and erythema; no induration." (Tr. 418). The medical records state that, regarding his buttock abscess, the doctor "will refer to general surgery due to persistence of infection. Begin Bactrim today" and that the "referral(s) initiated a general surgeon." (Tr. 420). On February 18, 2015, Plaintiff presented to CCHS. The medical records listed his "buttock abscess" as a current problem for Plaintiff. (Tr. 413).

**B.    Medical History After Plaintiff's Protective Filing Date of July 13, 2015**

Sometime in 2015, Plaintiff relocated to the Pensacola, Florida area where he began treatment at the Escambia Community Clinic ("ECC"). On October 29, 2015, Plaintiff presented to the ECC in order to establish care as a new patient. The treatment records indicate that Plaintiff was feeling well. (Tr. 440). Additionally, Plaintiff stated that he "has a fistula and would like to see a surgeon." (*Id.*). The treatment notes indicate "current plans," "colorectal cancer screening," "occult

blood, fecal, immunoassay." (Tr. 441). The nurse practitioner scheduled Plaintiff for a follow-up appointment. (*Id.*).

Plaintiff had a follow-up appointment on January 27, 2016. (Tr. 454-55). The treatment notes reflect that Plaintiff had started exercising, changed his eating habits, and planned to reduce his alcohol consumption. (Tr. 454). Additionally, the treatment notes reflect that Plaintiff was feeling well. (*Id.*). Jennifer Haugen, who is an advanced registered nurse practitioner, made a note regarding Plaintiff's anal fistula "will have patient complete we care paperwork (he states that he will bring it back) for fistula-I am not going to re-order if obt paperwork because does have bleeding due to his fistula." (*Id.*). The "current plan" in the treatment notes regarding Plaintiff's fistula state, "Referred to Referral, We Care. Provide referring physician with visit summaries. Assume management for problem and return to primary caregiver at conclusion of care." (Tr. 455).[4]

In March 2016, Ronald Kline, M.D., state agency medical consultant, reviewed Plaintiff's medical records and concluded that he could perform a range of medium work, that included standing and/or walking for 6 hours in an 8-hour workday and sitting (with normal breaks) for a total of 6 hours in an 8-hour workday.

---

[4] "The We Care Program address the specialty medical needs" of uninsured residents of Escambia County. Florida Department of Health in Escambia County, WE CARE PROGRAM, http://escambia.floridahealth.gov/programs-and-services/clinical-health/we-care/index.html (last visited July 30, 2020).

(159-60). Dr. Kline noted that the "symptoms, in [his] judgment, appear to be partially credible and attributable to the medically determinable impairments(s) that causes some limitation of residual function." (Tr. 159). Dr. Kline further explained that, the "severity of the symptoms and the alleged effect on function is not entirely consistent with the total medical and non-medical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alternations of usual behavior or habits." (*Id.*).

On March 28, 2016, Plaintiff returned to the ECC. (Tr. 516). Plaintiff complained of frequent bowel movements and urinary urgency. (*Id.*). Plaintiff had lost 13 pounds and his blood pressure had decreased. (*Id.*). Haugen noted that Plaintiff "will be contacted by GI office April 1st." (*Id.*). Within the "Review of Systems" in the treatment notes, the gastrointestinal note states "bleeding fistula-patient is getting in with GI doc." (*Id.*).

On May 15, 2016, Haugen again noted the fistula in Plaintiff's treatment notes and stated, "patient has not gotten in with GI via we care yet-gave patient phone number to contact we care office." (Tr. 514). The treatment notes also noted that Plaintiff was feeling well and that the new medications were working well for his depression and urinary urgency. On August 31, 2016, Plaintiff presented to the ECC for a follow up appointment. (Tr. 511). The notes again reflect that he was feeling well. (*Id.*). Additional notes state that "[p]atient has spoken with the lady at we care

and he needs a referral for a surgeon for his anal fistula-will do today." (*Id.*). Additionally, the notes state "patient states he has been diagnosed with an anal fistula-will get records from surgeon in Memphis." (*Id.*).

On November 30, 2016, Haugen again evaluated Plaintiff. (Tr. 501). She noted that "[p]atient is still waiting for surgeon via we care-brought info today for record releases for Memphis to get info about anal fistula-Angela Harmon, ARNP referred him to Dr. John Weston, surgeon." (*Id.*). The medical records from Plaintiff's March 1, 2017, and June 11, 2017, appointments continue to list "fistula" as Plaintiff's "Problem List/Past Medical." (Tr. 494, 480).

On June 11, 2017, Plaintiff returned to the ECC for a follow up appointment. Plaintiff was feeling well and there were no gastrointestinal issues present in the "Review of Systems" within the treatment notes. (Tr. 481). Plaintiff's anal fistula was included on the "Problem List/Past Medical" within his medical records. (Tr. 480). Juanita Fleming, M.D., noted that Plaintiff's referral to the We Care program was still pending. (*Id.*).

On September 23, 2017, Dr. Jian Mei, M.D., reviewed Plaintiff's medical records from the ECC. (Tr. 555).[5] In Dr. Mei's physical evaluation notes, Dr. Mei noted that Plaintiff presented to the clinic with a friend and that Plaintiff drove the

---

[5] The medical records that Dr. Mei reviewed include statements such as: "Patient states that he also has a fistula and would like to see a surgeon" (Tr. 440) and "patient does have bleeding due to his fistula." (Tr. 454).

vehicle. (Tr. 555). Under Plaintiff's "Activities of Daily Living," Dr. Mei states that Plaintiff lives by himself, but that he does have a caregiver that assists him with routine activities including dressing and cleaning. (Tr. 556). Dr. Mei states that Plaintiff can feed himself and can perform light household chores such as light cleaning. (*Id.*). Dr. Mei went on to state, "[d]ue to his incontinence, he has developed and [sic] ulcer to his sacral area. Require constant attention. He is currently being evaluated by surgery [sic] for possible fistula fixation." (*Id.*). Dr. Mei also stated that "there is a 2 CM round stage II ulcer to his coccyx. Area is erythematous." (Tr. 559). Dr. Mei determined that Plaintiff had the ability "to work based on an eight-hour day with adequate rest periods in the morning, noon and afternoon." (*Id.*). Plaintiff had a maximum standing/walking capacity of at least six hours and "no limitations" to his maximum sitting capacity. (*Id.*).

Sometime before March of 2018, Plaintiff moved back to Memphis, Tennessee, and returned to CCHS. (Doc. 12 at 13). On March 17, 2018, Plaintiff had an office visit at CCHS. (Tr. 80). Among other issues, the medical records note that "patient has an anal fistula of some sort. He was told that he needed some type of interventional surgery in the past. He has yet to hear about the general surgery referral that was placed by Heather Stone previously." (*Id.*). On May 30, 2018, Plaintiff presented to Regional One Health, OPC General/Trauma Surgery for treatment. (Tr. 94). The medical record from that visit describes Plaintiff as having

a three-year history of a draining perianal fistula with complaints of constant drainage, that is purulent, bloody, and sometimes contains fecal material. (*Id*.). At that appointment, the physician scheduled Plaintiff for a colonoscopy with general surgery and a referral to Dr. Shabata for treatment for his anal fistula.[6]

### III.    Relevant Hearing Testimony

**A.    <u>Relevant Testimony from the Hearing Held on August 3, 2017</u>**

On August 3, 2017, the ALJ held a videoconference hearing. (Tr. 125). During the hearing, the ALJ briefly questioned Plaintiff regarding his anal fistula. The ALJ asked Plaintiff, "where is the fistula located?" (Tr. 131). Plaintiff explained that it was "right next to [his] anus." (*Id*.). The ALJ then asked, "[h]ad they talked to you about any type of treatment for that, lancing procedure, surgical intervention? What have they talked to you, as far as treatment?" Plaintiff responded:

> Well, I went to Memphis and was employed by the City of Memphis. I went to a doctor there and he prescribed a treatment that he wanted me to do, which I totally disagreed with. And so, I told him I wanted to get

---

[6] Although the medical records from Regional One Health dated February 20, 2018 to June 14, 2018, and the medical records from CCHS dated March 17, 2018, were created prior to the ALJ's decision date of June 26, 2018, Plaintiff did not submit them to the ALJ. Plaintiff submitted these medical records to the Appeals Council in conjunction with seeking review of the ALJ's decision. (Tr. 2). The Appeals Council reviewed this evidence and determined that it did "not show a reasonable probability that it would change the outcome of the decision." (*Id*.). Accordingly, the Appeals Council denied Plaintiff's request for review. "A district court must consider evidence not submitted to the [ALJ] but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1266 (11th Cir. 2007).

a second opinion, and right now, I'm with Escambia County. I'm
waiting on a physician to give me a second opinion.

(Tr. 132.).

The ALJ inquired further by asking "Is this causing some difficulty with being

seated? Do you have to use a doughnut ring or something like that to sit on? Are you

having difficulty with sitting?" (*Id.*). Plaintiff responded "Yes, ma'am, I do. So I can

sit for a while, but then I got to stand up and shift my weight around." (*Id.*). At the

conclusion of the hearing, the ALJ ordered an internal medicine consultative exam

"based on the sparsity of the records." (Tr. 126).

**B.    Relevant Testimony from the Hearing Held on February 16, 2018**

On February 16, 2018, the ALJ held a supplemental hearing. (Tr. 99). The

ALJ inquired about Plaintiff's "pressure ulcer" or "fistula" and asked Plaintiff

"what's going on with that? There were some complaints with regard to that in 2016

and they sort of drop off in 2017 with Escambia Community Clinic." (Tr. 107).

Plaintiff testified that "the fistula is still there and is directly connected to [his] colon,

so it drains out of [his] colon, through the fistula into my rear-end area, which [he]

ha[s] to wear a diaper to catch the discharge." (*Id.*). Plaintiff explained that the ECC

referred Plaintiff to a doctor who "was supposed to look at my issue and that letter

never came." (*Id.*).

The ALJ asked whether Plaintiff reported to the ECC his need to wear a

diaper. (*Id.*). Plaintiff testified that he had told his providers. (*Id.*). Plaintiff further

stated that he was wearing a diaper at the hearing and was also wearing a diaper during the consultative exam performed by Dr. Mei. (Tr. 113). Plaintiff explained that during the exam, Dr. Mei did not examine the fistula, instead, Dr. Mei looked at a photograph of the fistula taken on an earlier date. Plaintiff explained that he had to wear the diaper lest the fluid that comes from the fistula soak his pants. (*Id.*).

At the hearing, the ALJ posed a series of hypothetical questions to Sue Berthaume, a vocational expert.

> Q: Let's assume an individual of the Claimant's age, education, and vocational experience, who can lift and carry 10 pounds frequently, 20 pounds occasionally. Can sit for a total of six hours during an eight hour workday and stand and walk for a total of six hours in an eight-hour workday. Can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Also, occasionally climb ladders, ropes, and scaffolds. Frequently reach with the right upper extremity. Can have occasional exposure to extreme heat, such as work around a blow torch or extreme cold, such as a freeze[r], but no work around unprotected heights or dangerous machinery. Could that individual perform any of the Claimant's past work?
>
> A. Yes, ma'am. Could do the inspector.
>
> Q: Okay. And let's look at hypothetical #2. Let's consider all these same limitations in hypothetical #1, but we're going to factor in absenteeism. Given the claimant's testimony regarding the frequency of gout flare-ups, the individual is going to have two or more unplanned absences each month, along with the limitations from hypothetical #1. Could that individual perform the Claimant's past work or any other work?
>
> A. No, ma'am.
>
> Q: And would an individual, such as the Claimant have any transferrable skills to the sedentary exertion level?

A: No, ma'am.

(Tr. 117-19). Plaintiff's attorney then posed the following hypothetical.

Q: If you assume an individual with the same limitations identified by the Court in hypothetical 1 with the additional limitation that this individual was forced to wear a diaper, due to, you know, leakage of waste material through his colon, such that it required either attention to that condition or a resulting ulcer, 15 to 20% of the time. Would that person be able to do the jobs that you've identified?

A: I'm not sure I understand your question of requiring attention or

Q: He was distracted from work, 15 to 20% of the time . . . due to the need to attend to the secretion from an anal fistula or ulcer that developed in response to it. Would that person be able to do any work?

A: No.

(Tr. 120-21). On June 26, 2018, after the supplemental hearing, the ALJ determined that Plaintiff has not been under a disability, as defined by the Act, since July 13, 2015, Plaintiff's application date. (Tr. 74).

## IV.    Findings of the ALJ

On June 26, 2018, in denying Plaintiff's claims, the ALJ made the following findings relevant to the issues raised in this appeal:

(1) Plaintiff had not engaged in substantial gainful activity since July 13, 2015, the application date.

(2) Plaintiff had the following severe impairments: gout, history of anal fistula, history of urinary incontinence, right shoulder bursitis, diabetes mellitus, hypertension, and obesity.

(3) Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

(4) Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

    (a) He could lift and carry 10 pounds frequently and 20 pounds occasionally.

    (b) He could sit for a total of 6 hours during an eight-hour workday and stand and walk for a total of 6 hours during an eight-hour workday.

    (c) He could occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, and climb ladders, ropes, and scaffolds.

    (d) He could frequently reach with the right upper extremity, tolerate occasional exposure to extreme heat (such as a blow torch) and extreme cold (such as a freezer), and work around unprotected heights or dangerous machinery.

(5) Plaintiff was capable of performing past relevant work as a building inspector.

(6) The claimant has not been under a disability, as defined in the Social Security Act, since July 13, 2015, the date the application was filed. (Tr. 63-74).

## V. Standard of Review

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991) (holding that a "determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."). Thus, the Commissioner's decision will not be disturbed if the decision is supported by substantial evidence *and* the Commissioner applied proper legal standards. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The Supreme Court has noted that the threshold for the evidentiary sufficiency in social security cases is not high. *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a mere scintilla." *Id.* It is not a preponderance, and it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)-(g),[7] the Commissioner analyzes a disability claim in five steps:

1.    Is the individual currently engaged in substantial gainful activity?

---

[7] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Therefore, citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404?

4.    Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512; *see Goode v. Comm'r of Soc. Sec.*, __ F.3d __, 2020 WL 4333473, at *1 (11th Cir. 2020) ("A claimant bears the burden at the first four steps."). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Goode*, 2020 WL 4333473, at *1; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. *Goode*, 2020 WL 4333473, at *1 (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

## VI.    Discussion

### A.    The Appeals Council Correctly Declined to Consider the Additional Evidence Dated After the ALJ's Decision on June 26, 2018.

On appeal, Plaintiff argues that the ALJ's decision was not supported by substantial evidence in light of the new evidence submitted to the Appeals Council, which the Appeals Council refused to consider. (Doc. 12 at 16). Plaintiff contends that this court must consider the additional evidence submitted to the Appeals Council in its entirety and urges this court to reverse the Commissioner's denial of disability benefits. The Commissioner, however, argues that the Appeals Council correctly declined to consider Plaintiff's additional evidence because the evidence did not relate to the relevant period at issue. (Doc. 13 at 12-13).

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Comm'r of Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram*, 496 F.3d at 1260-61). The Appeals Council "must consider new, material, and chronologically relevant evidence that the claimant submits." *Id.* (quoting *Ingram*, 496 F.3d at 1261); *see* 20 C.F.R. §§ 404.970(b), 416.1470(b). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is subject to judicial review . . . [W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our *de novo* review." *Washington*, 806 F.3d at 1320-21 (quotations

omitted). When "the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* at 1321; *see Farrell*, 692 F.3d at 771-72; *Threet*, 353 F.3d at 1191-92.

### 1.    *The Evidence Submitted to the Appeals Council was Cumulative to the Evidence that the ALJ Considered*

Evidence is considered "new" when it is not cumulative of other evidence that the ALJ considered. *Washington*, 806 F.3d at 1323 n.9 (explaining that a doctor's questionnaire was not new evidence because the questionnaire listing Plaintiff's symptoms and medications was cumulative because this evidence was already in the record.). To be considered "new," therefore, evidence must contain at least some relevant information that was not already part of the record considered by the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 457 F. App'x 850, 853 (11th Cir. 2012) ("The non-cumulative requirement is satisfied by the production of new evidence when similar evidence is not contained in the administrative record."); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986). Typically, evidence is "new" if it was created, or reflects developments that occurred, post-hearing. *See Vega v. Comm'n of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In the present case, the evidence Plaintiff submitted to the Appeals Council is mostly cumulative of the evidence regarding Plaintiff's anal Fistula which the ALJ

already possessed. For example, Plaintiff submitted this evidence to the Appeals Council regarding his anal fistula:

- A July 10, 2018, operation report detailing a colonoscopy doctors performed on Plaintiff indicating that "a perianal fistula was visible at approximately 4 o'clock on the perianal tissues." (Tr. 59).

- The medical records from the Methodist University Hospital indicating that "patient notes a 3-year history of fistula with purulent and occasional bloody drainage" and "patient admits drainage, pain and discomfort requiring him to wear a pad or a diaper." (Tr. 27).

- The Methodist University Hospital medical records describing Plaintiff's fistula. (*Id.*).

- The Methodist University Hospital records detailing that Plaintiff underwent surgery to repair his anal fistula. (Tr. 25).

- The Methodist University Hospital postoperative evaluation records following his September 20, 2018 surgery state that Plaintiff has "a history of fistula" at "4 o'clock, left posterolateral" and "patient admits drainage, pain and discomfort requiring him to wear a pad or a diaper." (*Id.*).

- Postoperative evaluation records from the UT Methodist Physicians stating that "Patient reports minimal drainage. Endorses 1-

2 well-formed BMs a day w/no associated pain/bleeding." (*Id.*). These records additionally indicate Plaintiff may need an additional corrective operation. (Tr. 13).

- On October 15, 2018, CCHS's medical records reflect that Plaintiff "had anal fistula repair but may need another operation in 12/2018." (Tr. 43).

- On January 24, 2019, CCHS's medical records confirm that Plaintiff had a second anal fistula repair in December of 2018, and that Plaintiff will need another anal fistula repair surgery in the future. (Tr. 39).

When the ALJ rendered her decision, she possessed evidence that Plaintiff suffered from an anal fistula—including Plaintiff's complaints of bleeding and fecal discharge from the fistula—and evidence of the treatment Plaintiff was receiving for his anal fistula. Specifically, when the ALJ rendered her decision, she possessed the following evidence relating to Plaintiff's anal fistula:

- An October 29, 2015, medical record from the ECC stated that Plaintiff "has a fistula and would like to see a surgeon." (Tr. 440).

- Treatment notes from the ECC on January 27, 2016, indicate that Plaintiff "does have bleeding due to his fistula." (Tr. 454).

- Medical records from the ECC state "bleeding fistula-patient is getting in with GI doc." (Tr. 516).

- A record from the ECC, which referred Plaintiff to a surgeon for his anal fistula. The records state that Plaintiff was previously diagnosed with an anal fistula by a surgeon in Memphis, Tennessee. (Tr. 511).

- Medical records from March 1, 2017, and June 11, 2017, continue to list "fistula" as Plaintiff's "Problem List/Past Medical." (Tr. 494, 480).

- Plaintiff's testimony that his fistula is located next to his anus and that it causes him difficulty while he is sitting to the extent that he has to stand up and shift his weight around. (Tr. 132).

- Plaintiff's testimony at the continued hearing that "the fistula is still there and is directly connected to [his] colon, so it drains out of [his] colon, through the fistula into [his] rear-end area, which [he] ha[s] to wear a diaper to catch the discharge." (Tr. 99).

- Plaintiff's testimony that he was wearing a diaper at the hearing, he wore one during the consultative examination performed by Dr. Mei, and he told his providers that he wore diapers. (Tr. 113).

Thus, the evidence that Plaintiff submitted to the Appeals Council is largely redundant to the information that the ALJ already possessed and considered. Indeed, the ALJ specifically noted that Plaintiff had been diagnosed with an anal fistula and that Plaintiff has bleeding secondary to the anal fistula. (Tr. 69-70). The evidence Plaintiff submitted to the Appeals Council simply confirms that Plaintiff has an anal fistula which causes bleeding/discharge. Because this evidence was redundant, for that reason alone, the Appeals Council did not err in declining to consider this evidence.

**2.    *The Evidence Submitted to the Appeals Council was Immaterial***

For a second, independent reason, the Appeals Council did not err in declining to consider the evidence Plaintiff submitted to it: it was immaterial.

The Appeals Council is not required to consider immaterial evidence. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1310 (11th Cir. 2018); *see Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 838 (11th Cir. 2020). Evidence "is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress*, 833 F.3d at 1309; *Washington*, 806 F.3d at 1321; *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

In the records which Plaintiff submitted to the Appeals Council, his physicians made no specific medical findings or diagnoses regarding Plaintiff's anal fistula. Nor do these records alter the understanding of Plaintiff's symptomatology. Rather, these

records merely confirm that Plaintiff has an anal fistula and that Plaintiff complained of bleeding and drainage from his fistula.[8] Therefore, this mere confirmation of Plaintiff's diagnosis of an anal fistula and the symptoms he reported likely would not change the administrative result. Because the information was immaterial, for this reason as well, the Appeals Council did not err in declining to consider it.

Because the evidence that Plaintiff submitted to the Appeals Council is cumulative and immaterial, the Appeals Council did not err in declining to consider this evidence.

**B.    Substantial Evidence Supports the ALJ's Decision**

Plaintiff argues that the ALJ failed to articulate adequate and explicit reasons to discount the testimony of Plaintiff related to the severity of the symptoms he suffered due to his anal fistula. (Doc. 12 at 21).

The Eleventh Circuit has established a three-part standard for evaluating a plaintiff's testimony regarding subjective symptoms. *Foote*, 67 F.3d at 1560; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This "pain standard" requires the

---

[8] These records note Plaintiff's subjective complaint that he requires a diaper to intercept the blood and fecal material draining from his fistula. Plaintiff argues that these records undermine the ALJ's determination that there was no objective evidence that Plaintiff "was wearing a diaper during any examinations from with evidence of record . . . ." (Tr. 70). But these records merely restate Plaintiff's subjective complaints about wearing a diaper, and do not include objective evidence that Plaintiff indeed was wearing a diaper during the examination. In this respect, therefore, they are redundant to the evidence already considered by the ALJ.

plaintiff to: (1) submit evidence of an underlying medical condition; and either (2) point to objective medical evidence that confirms the severity of the alleged symptoms arising from that condition; or (3) submit evidence that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Foote*, 67 F.3d at 1560; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986); *see* 20 C.F.R. § 404.1529(a) (informing claimants that "statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged"). "This standard also applies to complaints of subjective conditions other than pain." *Holt*, 921 F.2d at 1223.

The ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)); *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). A plaintiff's subjective testimony that is supported by medical evidence, and which satisfies the three-part pain standard, is itself sufficient to support a finding of

disability. *Landry*, 782 F.2d at 1553; *Hale*, 831 F.2d at 1011; *MacGregor*, 786 F.2d at 1053-54.

"If proof of disability is based upon subjective evidence and a credibility determination is, therefore, crucial to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (citation and quotation marks omitted); *MacGregor*, 786 F.2d at 1054 ("If the Commissioner refuses to credit" the subjective testimony of the Plaintiff concerning pain "he must do so explicitly and give reasons for that decision . . . . Where he fails to do so we hold as a matter of law that he has accepted the testimony as true."); *Holt*, 921 F.2d at 1223. The reasons articulated by the ALJ must be based on substantial evidence. *Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

### 1.    *Plaintiff's Subjective Complaints Regarding His Anal Fistula*

On appeal, Plaintiff challenges the ALJ's evaluation of Plaintiff's subjective complaints related to his anal fistula. At step four, the ALJ recounted Plaintiff's testimony relating to his anal fistula:

> At the August 2017 hearing, the claimant testified that he is unable to work due to gout, hypertension, and a fistula . . . His fistula requires him to use a donut to sit and alternate between sitting and standing. He also noted that he constantly wears a diaper because of his

fistula. His activities decreased and he no longer performs work around his house.

(Tr. 69-70).

The ALJ then determined that Plaintiff's subjective symptoms were inconsistent with the medical evidence of record. The ALJ stated:

> [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of [his] alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record as explained in this decision.

(*Id.*).

The ALJ then detailed the perceived inconsistencies as to Plaintiff's anal fistula as follows:

> The Evidence of record documents the claimant's diagnoses and treatment for an anal fistula and urinary incontinence (Exhibits 6F, 8F, 12F, and 13F). These same records note complaints of bleeding secondary to a fistula, urinary incontinence, and an ulcer secondary to his incontinence (Exhibits 6F, 8F, 12F, and 13F). Examination findings have noted abscesses and some problems with walking tests (Exhibits 4F and 13F). Records also note, however, that the claimant has indicated on various occasions that he was feeling well, noted that he was exercising, denied pain, and indicated his medication for urinary incontinence was working (Exhibits 6F, 8F, and 12F). Additionally, examination findings have revealed proper grooming, normal range of motion of his extremities, ambulation with a normal gait, appropriate dress, no problems rising from a seated position, and notably, no evidence that the claimant was wearing a diaper during any examinations from with evidence of record (Exhibits 4F, 6F, 8F, 12F, and 13F).

(Tr. 70).

The reasons articulated by the ALJ for discounting Plaintiff's subjective complaints are based on substantial evidence. The medical evidence of record demonstrates that although Plaintiff complained of his fistula bleeding, he also reported on several occasions that he was not experiencing significant pain and, in fact, was feeling well. (Tr. 491, 494, 440, 454, 456). Additionally, evidence in the record indicates that Plaintiff was exercising and losing weight. (Tr. 454, 516).

The ALJ also noted that Plaintiff's self-reported activities of daily living were not consistent with his statements regarding his symptoms. (Tr. 72). For example, at times Plaintiff lived by himself, drove himself to his medical appointments, performed light household chores to include light cleaning, and dressed and undressed himself. (Tr. 555-57). "A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints." *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011); *see Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

Additionally, in March 2016, Ronald Kline, M.D., state agency medical consultant, reviewed Plaintiff's medical records and concluded that he could perform a range of medium work, that included standing and/or walking for 6 hours in an 8-hour workday and sitting (with normal breaks) for a total of 6 hours in an 8-hour workday. (159-60). Dr. Kline noted that the "symptoms, in [his] judgment, appear to be partially credible and attributable to the medically determinable

impairment(s) that causes some limitation of residual function." (Tr. 159). Dr. Kline further explained that, the "severity of the symptoms and the alleged affect [sic] on function is not entirely consistent with the total medical and non-medical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alternations of usual behavior or habits." (*Id.*).

Finally, in September 2017, Jian Mei, M.D., performed a consultative examination of Plaintiff and concluded that he could perform a range of work at the heavy exertional level. (Tr. 549-59). The ALJ assigned only partial weight to Dr. Mei's opinion insofar as the ALJ determined that Plaintiff could not perform work that required heavy exertion. (Tr. 72).

Accordingly, the ALJ's determination that Plaintiff was not disabled during the relevant period is supported by substantial evidence, including medical evidence and treatment notes.

### 2.    *The ALJ's Use of the Phrase "History of Anal Fistula"*

Plaintiff also argues that the ALJ erred in stating that Plaintiff had a "history of Anal Fistula" at step two and throughout the ALJ's decision. (Doc. 12 at 19); (Tr. 65). Plaintiff argues that the word "history" "indicates that [Plaintiff] only suffered from an anal fistula in the past, and it was not a present problem." (Doc. 12 at 18-19). Plaintiff argues that the medical records establish that Plaintiff's anal fistula is a "serious and on-going problem." (*Id.* at 19).

Although Plaintiff argues that the ALJ merely referred to his anal fistula as a "history of anal fistula" and not an "on-going anal fistula," Plaintiff's argument is belied by the ALJ's decision. The ALJ at times utilized the phrase "history of anal fistula" and at other times, speaks of the anal fistula as a present impairment. *See* (Tr. 69) (ALJ recounting that Plaintiff stated he was unable to work due to "a fistula"); (Tr. 69-70) (stating that Plaintiff's "fistula requires him to use a donut to sit and alternate between sitting and standing."). All parties agree that Plaintiff had a history of an anal fistula which remained an impairment while Plaintiff's claim was pending. Therefore, as a factual matter, the ALJ was correct that Plaintiff had *both* a history of suffering from an anal fistula and that he continued to suffer from an anal fistula. Because the ALJ was charged with determining whether Plaintiff was disabled since July 13, 2015—which necessitates a retrospective inquiry—an assessment of Plaintiff's medical history was required and proper.[9]

Plaintiff further argues that, "the denial that the fistula was not a current problem for [Plaintiff] is necessary in order for the ALJ to assert that there is "[N]o evidence that the claimant was wearing a diaper during any of the examinations [of

---

[9] The time frame most relevant to Plaintiff's claim for SSI is July 13, 2015 (the date he applied for benefits) through June 26, 2018 (the date the ALJ issued his decision), although Plaintiff alleges disability commencing in February 2015. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).

record]." (Doc. 12 at 19). This is simply not the case. The excerpt Plaintiff references

is as follows:

> The Evidence of record documents the claimant's diagnoses and treatment for an anal fistula and urinary incontinence (Exhibits 6F, 8F, 12F, and 13F). These same records note complaints of bleeding secondary to a fistula, urinary incontinence, and an ulcer secondary to his incontinence (Exhibits 6F, 8F, 12F, and 13F). Examination findings have noted abscesses and some problems with walking tests (Exhibits 4F and 13F). Records also note, however, that the claimant has indicated on various occasions that he was feeling well, noted that he was exercising, denied pain, and indicated his medication for urinary incontinence was working (Exhibits 6F, 8F, and 12F). Additionally, examination findings have revealed proper grooming, normal range of motion of his extremities, ambulation with a normal gait, appropriate dress, no problems rising from a seated position, **and notably, no evidence that the claimant was wearing a diaper during any examinations from with evidence of record** (Exhibits 4F, 6F, 8F, 12F, and 13F).

(Tr. 70) (emphasis added).

The ALJ cites five sets of office treatment records in support of the ALJ's

proposition that there was no evidence in the record that Plaintiff was wearing a

diaper during an examination. The exhibits the ALJ cited were the office treatment

records from CCHS, dated January 28, 2014 to February 18, 2015 (Tr. 413-34); the

office treatment records from the ECC, dated October 29, 2015 (Tr. 439-48); the

office treatment records from the ECC, dated October 29, 2015 to January 27, 2016

(Tr. 451-69); the office treatment notes from the ECC, dated March 3, 2016 to June

9, 2017 (Tr. 477-547); and the consultative examination report, dated September 23,

2017, from Jian Mei, M.D. (Tr. 548-60).

As the ALJ concluded, none of these records state that Plaintiff was wearing a diaper during an examination. Although there is one medical record dated January 9, 2015, which indicates that Plaintiff had to wear a "pad" due to a bleeding hemorrhoid, the rest of the examination records do not contain objective evidence that Plaintiff was wearing a diaper during the medical examinations. *See Mennella v. Comm'r of Soc. Sec.*, 697 F. App'x 665, 666 (11th Cir. 2017) (holding that the lack of objective evidence supporting the claimant's allegations supported the ALJ's decision). Plaintiff, therefore, has not shown that the ALJ's assessment of the evidence was inaccurate in this respect, and he has not shown that the ALJ's decision was not supported by substantial evidence.

## VII.   Conclusion

The Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); *Lewis*, 125 F. 3d at 1439; *Foote*, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1.      The decision of the Commissioner be **AFFIRMED**, and this action be **DISMISSED.**

2.      **JUDGMENT** be entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.    The clerk of the court be directed to close the case file.

At Panama City, Florida, this 10th day of August, 2020.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.